# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ANDREW F. ARRIETA,

    Plaintiff,

v.

SARAH E. BENNETT and ROTHSTEIN, DONATELLI, HUGHES, DAHLSTROM & SCHOENBURG, LLP,

    Defendants.

No. 1:17-cv-00986-PJK-KBM

# MEMORANDUM OPINION AND ORDER

THIS MATTER is before the court on three motions: (1) Defendants' Motion for Partial Summary Judgment filed September 7, 2018 (ECF No. 48), (2) Defendants' Joint Motion for Summary Judgment September 7, 2018 (ECF No. 49), and (3) Defendants' Daubert Motion to Exclude Opinions of Plaintiff's Legal Expert, Claudia Work filed September 5, 2018 (ECF No. 46). Upon consideration thereof, the court finds the motions are well taken and should be granted.[1]

---

[1] This case was transferred to the undersigned on June 12, 2019. ECF No. 60.

## Background

**A.  Divorce Proceedings**

Plaintiff Andrew Arrieta married Rachel Rogers in May 2013, but by 2015 their marriage had soured.  Pretrial Order at 7 (ECF No. 61).  Mr. Arrieta hired Defendant Sarah Bennett, then working at Defendant law firm Rothstein Donatelli, to represent him in the divorce proceedings.  Id.  For her representation, Ms. Rogers hired David Walther and Amber Macias-Mayo.  Id.  In April 2015, the parties initially attempted collaborative law procedures to avoid litigation, but they were not successful.  Defs.' Joint Mot. Summ. J. at 6, Undisputed Material Fact ("UDMF") Nos. 3–4 (ECF No. 49).  After this attempt, Mr. Arrieta and Ms. Rogers — without their attorneys' knowledge — prepared and signed a one-page handwritten, untitled document addressing certain aspects of their marriage dissolution.[2]  Pretrial Order at 7; UDMF No. 5.  In the document, Ms. Rogers was to pay Mr. Arrieta $3.25 million.  Pl.'s Resp. Opp'n Mot. Summ. J., Ex. A (ECF No. 51-1).

On July 2, 2015, Ms. Rogers filed a petition for dissolution of marriage in New Mexico state court.  Pretrial Order at 7.  On July 8, she filed a motion to set aside the handwritten document, UDMF No. 6, while on September 8, Mr. Arrieta filed a motion to enforce it.  Id.  On January 12, 2016, the parties met with a mediator to conduct a settlement facilitation.  UDMF No. 8.  The settlement facilitation was not successful; the parties nonetheless attempted to reach agreement on a settlement amount and exchanged

---

[2]  To distinguish it from the counseled settlement agreement that Mr. Arrieta later agreed to, this document will be referred to as the "handwritten document" throughout.

2

a series of offers and counteroffers.  UDMF No. 9.  This round of settlement negotiations concluded with an offer from Ms. Rogers to pay $1.2 million to settle various divorce issues, $45,000 for the couple's outstanding tax obligations, and $35,000 for the couple's credit card debt.  Id.

On April 11, 2016, the parties attended a pretrial conference in district court.  UDMF No. 11.  The next day, Mr. Arrieta offered a settlement agreement to Ms. Rogers in which she would pay $2.8 million as a property settlement.  UDMF No. 12.  On April 18, Ms. Rogers countered with her "best and final" offer to pay $1.35 million as a property settlement.  UDMF No. 13.  The following day, Mr. Arrieta countered with a proposal for Ms. Rogers to pay $2.5 million in property settlement.  UDMF No. 14.  That same day, Ms. Rogers rejected Mr. Arrieta's counterproposal and notified him that she would not submit any further settlement offers.  UDMF No.15.

On April 22, the court entered a pretrial order with a schedule for discovery and set a trial date of May 9, 2016.  UDMF Nos. 17–18.  The trial was ultimately continued, first to begin on September 15, and then to begin on December 13.  UDMF Nos. 19–20.  After the pretrial order was entered and leading up to the trial date, the parties engaged in extensive discovery and investigation, which included deposing witnesses, subpoenaing documents, retaining experts, and other trial preparation.  UDMF No. 21.  On December 8, 2016 — days before the trial was set to begin — one of Ms. Rogers's attorneys, Amber Macias-Mayo, contacted Ms. Bennett and told Ms. Bennett that Ms. Rogers would consider paying Mr. Arietta $1.5 million as property settlement.  UDMF No. 24.  This offer restarted settlement negotiations, and on December 12, the parties agreed to the $1.5

3

million payment for property settlement and memorialized the settlement in a stipulated memorandum of understanding.  Id.

Ms. Bennett says she then discussed the settlement agreement with Mr. Arietta and conveyed to him her professional opinion of the settlement agreement and her judgment of the risks and benefits of accepting the settlement rather than proceeding to trial. UDMF No. 26.  Mr. Arietta for his part argues he was not fully or accurately informed regarding the decision to accept the settlement and that the advice he did receive was intended to benefit Ms. Bennett and a law firm she would later join.  Pl.'s Resp. Opp'n at 4 (ECF No. 51); First Am. Compl. at 4, ¶ 24 (ECF No. 4).  Having agreed to the stipulated memorandum of understanding, the parties signed a full marital settlement agreement.  It merged into the final decree, which was approved and entered by the state court on December 28, 2016.  UMDF No. 27.  The final agreement provided that Ms. Rogers would pay $1.5 million in property settlement in increments of $12,400 per month at 5% interest, with a 1% discount if paid ahead of schedule.  Defs.' Mot. Summ. J., Ex. B. at 53–54 (ECF No. 49-2).

**B.     Merger of Law Practices**

After the entry of the marriage settlement and final decree, David Walther and Amber Macias-Mayo — who had represented Ms. Rogers — approached Ms. Bennett and her associate Morgan Honeycutt to discuss potentially merging their law practices. Defs.' Mot. Partial Summ. J. at 4.  On approximately January 16 or 17, 2017, Ms. Macias-Mayo had a lunch with Ms. Honeycutt and broached the topic of Ms. Honeycutt potentially leaving Rothstein Donatelli to join Ms. Macias-Mayo and Mr. Walther.  Id.

Ms. Honeycutt informed Ms. Macias-Mayo that she would not consider leaving unless Ms. Bennett also joined. Id. at 5. On January 17, Mr. Walther approached Ms. Bennett and suggested that she leave Rothstein Donatelli and that they merge their law practices. Id. at 6. She wanted a few days to consider the offer. Id. Mr. Walther testified in his deposition that she agreed to join law practices by some point in February 2017. Id. Mr. Arrieta, for his part, argues that Walther, Macias-Mayo, Bennett, and Honeycutt had agreed to merge their law practices before the marital agreement was entered in December 2016, and that he was encouraged to settle so that an ongoing conflict of interest that could hinder the merger would be resolved. Pl.'s Resp. Opp'n Mot. Partial Summ. J. at 6–7 (ECF No. 52).

**C.     Current Lawsuit**

On September 27, 2017, Mr. Arrieta sued Ms. Bennett and her former law firm Rothstein Donatelli in a four-count complaint. Compl. at 5–8 (ECF No. 1). Count 1 alleged legal malpractice in advising Mr. Arrieta to agree to the settlement agreement, Count 2 alleged breach of fiduciary duty for self-dealing by merging her practice with opposing counsel, Count 3 alleged fraud for false representations about Ms. Bennett's conduct as Mr. Arrieta's attorney, and Count 4 alleged breach of contract for failure to abide by the retainer agreement. Id. Mr. Arrieta demanded $1.75 million in damages — the difference between the amount he received in the settlement agreement and the amount he would have received if the handwritten agreement had been enforced in full. Id. Additionally, he demanded punitive damages for Defendants' alleged willful, bad faith behavior, id. at 9, and treble damages under N.M. Stat. Ann. § 36-2-17. Id.

5

## Discussion

**A.     Motions for Summary Judgment**

Summary judgment should be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may be granted as to any claim or defense, or any *part* of any claim or defense. Id.  When ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. Banner Bank v. First Am. Title Ins. Co., 916 F.3d 1323, 1326 (10th Cir. 2019).

The moving party bears the initial burden of demonstrating its right to summary judgment. But where, as here, the moving party does not bear the ultimate burden of proof at trial, it "may satisfy its summary-judgment burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim." Fox v. Transam Leasing, Inc., 839 F.3d 1209, 1218 (10th Cir. 2016) (alterations and internal quotation marks omitted) (quoting Savant Homes, Inc. v. Collins, 809 F.3d 1133, 1137 (10th Cir. 2016)).  Mr. Arrieta, then, must demonstrate "by citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that specific facts show there remains a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In doing so, he cannot rely on "mere allegations" from his pleadings or briefs. Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2002) (quoting Lake Hefner Open Space All. v. Dole, 971 F.2d 943, 945 (10th Cir. 1989)).  And "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment"; rather, the nonmovant must show the dispute is one on which a reasonable jury could find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). In other words, the nonmovant must come forward with "significantly probative" evidence demonstrating an issue for trial. Id. at 249–50.

1.  **Motion for Partial Summary Judgment**

Here, Defendants met their initial burden to show they were entitled to partial summary judgment by arguing in their motion that Mr. Arrieta has no evidence that establishes Ms. Bennett, Mr. Walther, and Ms. Macias-Mayo had decided to merge their law practices *prior* to Defendants counseling him to accept the second settlement agreement. See Fox, 839 F.3d at 1218–19. Thus, Mr. Arrieta must show facts from the record that would allow a jury to find in his favor on this claim.

At the outset it is worth clarifying the purpose of summary judgment. According to Mr. Arrieta, summary judgment is inappropriate to "limine out the facts of this case." Pl.'s Resp. Opp'n Mot. Partial Summ. J. at 2 (ECF No. 52). He argues Defendants are using their motion for partial summary judgment to inappropriately preclude him from arguing the facts surrounding Defendants' advice that he accept the settlement agreement. He misapprehends both the law regarding summary judgment and the effect of Defendants' motion.

Rule 56 allows summary judgment not only for entire claims, but also for parts of claims. The purpose of summary judgment is to narrow the issues for trial, and primarily the factual issues for trial. It is for this reason that Rule 56 focuses on "genuine disputes"

7

of "material fact." As the Supreme Court has said, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323–24. That is exactly the purpose for which Defendants have used Rule 56 here. Mr. Arrieta claims Ms. Bennett engaged in self-dealing, i.e., that she labored under a conflict of interest (and elevated her interests above his) when she began discussions to merge her law practice and then convinced him to accept a settlement agreement. The self-dealing, conflict-of-interest allegation is a portion of a *legal* claim that Defendants argue is entirely unsupported by the facts; there were no plans or discussions to merge law practices at the time of the settlement negotiations. (Indeed, it is worth noting Defendants have gone beyond their burden and begun to *negate* Mr. Arrieta's conflict of interest claim. See id. at 323.)

A claim or portion of a legal claim that lacks factual support in the record should be resolved on summary judgment. See id. at 327 ("Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims have no factual basis."). Resolution of that legal claim may affect other claims, but not because Rule 56 has been used as a quasi–rule of evidence to "limine" out facts. Thus, Mr. Arrieta's assertion that Defendants' motion is being used for an improper purpose is without merit.

After disposing of that issue, Mr. Arrieta's only argument against partial summary

judgment on the self-dealing claim is that the jury is entitled to hear evidence on whether Defendants agreed to merge practices before he was counseled to settle. Pl.'s Resp. Opp'n Mot. Partial Summ. J. at 6. He argues that because the merger was "mere months" after the settlement agreement and because Ms. Bennett worked on "some loose ends" with his case *after* the merger, his claim should proceed. He produces no evidence tending to show that the merger was even contemplated or discussed prior to the advice that he now challenges.

The Rule makes clear that speculation is not enough to defeat a summary judgment motion. Fed. R. Civ. P. 56(c)(1). He bears the ultimate burden of persuasion at trial to prove the Defendants engaged in self-dealing. That means he must support, through specific facts in the record beyond his pleadings and briefs, that there is evidence on which a reasonable jury could find for him on that issue. Celotex, 477 U.S. at 324. The allegations in the pleadings are not enough to find there is a genuine, material issue for trial. Accordingly, Defendants are entitled to partial summary judgment on the issue whether Ms. Bennett engaged in self-dealing by agreeing to merge her practice before counseling Mr. Arrieta to settle.

    **2.    Joint Motion for Summary Judgment**

Defendants also moved for summary judgment as to all of Mr. Arrieta's other claims. Because Mr. Arrieta cannot demonstrate a genuine dispute of material fact as to Defendants' failure to meet the standard of care or whether he reasonably could have expected a better outcome absent any negligence, he cannot sustain his malpractice claim. And without the malpractice claim or self-dealing claim, Defendants are entitled to

9

summary judgment on the remaining claims.

First, Mr. Arrieta cannot establish a genuine dispute of material fact as to his malpractice claim. In New Mexico, a plaintiff suing his attorney for legal malpractice based on negligence must show (1) the attorney was negligent in the preparation, investigation, or trial of the case, and (2) the negligence was the proximate cause of the plaintiff's injury. See Sanders v. Smith, 496 P.2d 1102, 1104–05 (N.M. Ct. App. 1972). New Mexico has not, however, explicitly defined what must be proven (and to what certainty) when a settling party later claims that the settlement is inadequate due to attorney malpractice.

There is no uniform standard that states apply to plaintiffs in these kinds of malpractice cases. See Louie Castoria, Settle and Sue: Settlements as Preludes to Malpractice Claims, 26 No. 12 Westlaw J. Prof. Liability 1, 2–5 (2017). At one end of the spectrum, California imposes the highest burden on plaintiffs in settle-and-sue cases. The California Court of Appeals in Filbin v. Fitzgerald required a plaintiff to demonstrate "to a legal certainty" that she would have received a higher damages award if she had not agreed to settle. 149 Cal. Rptr. 3d 422, 432 (Ct. App. 2012). The plaintiff is required to show that but for the attorney's malpractice "she would *certainly* have received more money in settlement or at trial." Id. (internal quotation marks omitted) (quoting Slovensky v. Friedman, 49 Cal. Rptr. 3d 60, 67 (Ct. App. 2006)). Other states impose less stringent requirements. Illinois, for example, does not impose a legal certainty requirement, but it does require a plaintiff to "show that he settled for a lesser amount than he could reasonabl[y] expect without the malpractice." Webb v. Damisch, 842

N.E.2d 140, 149 (Ill. App. Ct. 2005).  Similarly, Texas requires a malpractice plaintiff to prove that she suffered an injury from the negligent advice to settle.  See Tate v. Goins, Underkofler, Crawford & Langdon, 24 S.W.3d 627, 635 (Tex. App. 2000) ("To prevail on his legal malpractice claim, [the plaintiff] must prove that he was damaged.  While uncertainty as to the *amount* of damages is not fatal to recovery, lack of evidence or uncertainty as to the *fact* of damages is." (citations omitted)).

Here, the court determines that Mr. Arrieta's claim fails regardless.  The court notes that Mr. Arrieta's statement that he only need provide evidence raising a genuine issue of material fact if the Defendants' motion establishes lack of a genuine issue is incorrect.  A movant is not required to disprove nonmovant's case.  Celotex, 477 U.S. at 323.  Mr. Arrieta simply has no evidence, let alone an expert opinion, that Ms. Bennett's conduct led to a settlement that was unreasonable under the circumstances.  Any lack of documentation in Ms. Bennett's files about her meetings and advice to her client cannot be the cause of his claimed injury.  Though Mr. Arrieta argues that causation should be submitted to the jury when reasonable minds may differ, no reasonable trier of fact could conclude that a failure to advise Mr. Arrieta about the case caused the injury.

Mr. Arrieta's theory of the case is that Ms. Bennett was paid to enforce a contract and she did not, and that she was too "pushy" in "trying to make the settlements."[3]  Pl.'s Resp. Opp'n Mot. Summ. J., Ex. E at 7–9, 51:22–23, 52:11–20, 134:2–5 (ECF No. 51-5).

---

[3]  Defendants' expert opined that it was more likely than not that the handwritten document would not have been enforced for many reasons.  Pl.'s Resp. Opp'n Mot. Summ. J., Ex. C at 7, 50:17–22 (ECF No. 51-3).

Not surprisingly, Mr. Arrieta does not want to set aside the settlement agreement with Ms. Rogers and its substantial periodic payments. Instead, he claims that Ms. Bennett is responsible for the $1.75 million difference between the settlement agreement and the amount on the earlier handwritten document.

Mr. Arrieta's own statements demonstrate that he was aware that Ms. Rogers challenged the handwritten document, notwithstanding his belief that it was valid and enforceable. He admits that Ms. Bennett sought to enforce the agreement, but he was advised that he might lose, that he might not receive any amount, that there would be delay and further legal expenses. Id. at 9. In the real world of trial and uncertain proof, such advice is eminently reasonable. Ms. Rogers's lawyers had many defenses available to them at a trial, and it was not beyond the realm of possibility that Mr. Arrieta may have walked away with significantly less given an approximately two-year marriage where the property division could be viewed largely as a form of spousal support. The decision whether to litigate a case to judgment (with a possibility of appeal) always involves risk assessment. The decision must be made on the basis of imperfect and incomplete knowledge; it is never possible to know exactly how a case will play out at trial, nor how a trier of fact's receptiveness to a case will affect the outcome. The advice to counsel a client to settle relies on an experienced attorney's judgment given the totality of the circumstances — Mr. Arrieta has not presented any evidence in this case that Defendants ignored important circumstances, failed to adequately prepare for trial or search for theories that would give the case better odds of success, or made a critical mistake in their legal analysis of the odds of winning at trial. See Collins v. Perrine, 778 P.2d 912

(N.M. Ct. App. 1989); Rodriguez v. Horton, 622 P.2d 261 (N.M. Ct. App. 1980). On the operative facts as presented, Defendants competently counseled Mr. Arrieta to settle his claim. Defendants are entitled to summary judgment on the malpractice claim.

Second, without a self-dealing claim or malpractice claim as foundation, Mr. Arrieta cannot sustain his fraud, breach of fiduciary duty, or breach of contract claims. Each of those claims relies on some bad act vis-à-vis Defendants' conduct in the settlement negotiations, and as has already been explained the operative facts demonstrate that Defendants behaved competently in counseling Mr. Arrieta to settle. As a matter of law, then, those claims cannot be sustained. Defendants are entitled to summary judgment on those claims as well.

**B.      Daubert Motion**

To reiterate, a New Mexico malpractice suit requires the plaintiff to show: (1) the attorney was negligent in the preparation, investigation, or trial of the case, and (2) the negligence was the proximate cause of the plaintiff's injury. Sanders, 496 P.2d at 1105. The first element requires a plaintiff to "show, usually through expert testimony, that his or her attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity." Hyden v. Law Firm of McCormick, Forbes, Caraway & Taylor, 848 P.2d 1086, 1089–90 (N.M. Ct. App. 1993). To support his claim, Mr. Arietta plans to introduce expert testimony from Claudia Work, which Defendants oppose.

Under Federal Rule of Evidence 702, a witness may be qualified as an "expert" by her "knowledge, skill, experience, training, or education." If so qualified, the expert is permitted to testify "in the form of an opinion" if:

13

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Before a witness may testify as an expert, then, the court must answer three questions. First, does this witness have the qualifications to serve as an "expert" under any of the five enumerated categories? Second, would her expertise help the trier of fact understand the evidence? Fed. R. Evid. 702(a); Bill Barrett Corp. v. YMC Royalty Co., 918 F.3d 760, 771–72 (10th Cir. 2019) (upholding exclusion of expert testimony that, among other things, would not help the jury in deciding the ultimate facts). And finally, even if the witness is qualified to testify as an expert, is the expert's proposed testimony relevant and reliable? Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 594–95 (1993). If the testimony lacks a sufficient underlying basis in fact or is not the product of a reliable methodology, it should be excluded. Fed. R. Evid. 702(b), (c) & (d).

Here, while Ms. Work received her J.D. from the University of New Mexico and practices in the area of family law, her experience is not specific to New Mexico. Instead, she has primarily practiced in Arizona with only limited experience in New Mexico, and many years ago at that. As such, the nexus between her competence and the subject matter of her testimony is too attenuated to qualify her to give an opinion on New Mexico's duty of care. See, e.g., Robinson v. GEICO Gen. Ins. Co., 447 F.3d 1096, 1101 (8th Cir. 2006) (holding witness's competence must match the subject matter of the testimony). While many aspects of law practice and professional responsibility are

generalizable, the judgment to counsel a client to settle a case depends in many ways on local experience. It will turn on a complex mix of past experience in practicing in a particular court or in front of the local bench, knowledge of the state's substantive law, knowledge of one's opponents, and the strength of the evidence and arguments in a given case. To be helpful to the factfinder here, Ms. Work would need to be able to opine not merely on how lawyers in general should weigh the benefits and costs of settlement for their clients, but the odds of Mr. Arrieta's success at trial in *this* case, under *these* circumstances. The court is not convinced, then, that Ms. Work's expertise qualifies her to testify as to how the legal standard of care applied to the facts of Mr. Arrieta's case, nor that her testimony would be helpful to a jury in determining the ultimate facts. Defendants' motion to exclude should be granted.

NOW, THEREFORE, IT IS ORDERED that Defendants Sarah E. Bennett and Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg LLP's (1) Motion for Partial Summary Judgment (ECF No. 48) filed September 7, 2018, is granted, (2) Joint Motion for Summary Judgment (ECF No. 49) filed September 7, 2018, is granted, and (3) <u>Daubert</u> Motion to Exclude Opinions of Plaintiff's Legal Expert, Claudia Work (ECF No. 46) filed September 5, 2018, is granted.

DATED this <u>5th</u> day of July 2019, at Santa Fe, New Mexico.

/s/ Paul Kelly, Jr.
United States Circuit Judge
Sitting by Designation

Counsel:

Wesley Johnson and Eric Hines, Cooper & Scully P.C., Dallas, Texas; Sean P. McAfee, Law Office of Sean P. McAfee, Albuquerque, New Mexico; and Tom Carse, Carse Law Firm, Dallas, Texas, for Plaintiff.

Briggs F. Cheney and Joshua A. Allison, Sheehan & Sheehan P.A., Albuquerque, New Mexico, for Defendant Sarah E. Bennett.

Thomas A. Simons IV and Frieda Simons Burnes, The Simons Firm LLP, Santa Fe, New Mexico, for Defendant Rothstein, Donatelli, Hughes, Dahlstrom & Schoenburg LLP.